1  ROBERTA STEELE, SBN 188198 (CA)
   MARCIA L. MITCHELL, SBN 18122 (WA)
2  U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
   San Francisco District Office
3  450 Golden Gate Ave., 5th Floor West
   P.O. Box 36025
4  San Francisco, CA 94102
   Telephone No. (650) 684-0934
5  Fax No. (415) 522-3425
   marcia.mitchell@eeoc.gov

*Attorneys for Plaintiff EEOC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>PACKAGING CORPORATION OF AMERICA, and SCHWARZ PARTNERS, LP,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**<br><br>**JURY TRIAL DEMAND** |

## **NATURE OF THE ACTION**

The United States Equal Employment Opportunity Commission (EEOC) brings this action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Parties Caleb Calloway and Marvin Lyles, who were adversely affected by such practices. As alleged below, Defendants Packaging Corporation of America (PCA) and Schwarz Partners, LP (Schwarz), acting as joint employers, engaged in unlawful discrimination by subjecting Charging Parties to racial harassment in violation of Title VII.

///

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in the United States District Court for the Eastern District of California because the alleged unlawful employment practices were committed within the city of McClellan, in Sacramento County, California.

## INTRADISTRICT ASSIGNMENT

3. This action is appropriate for assignment to the Sacramento Division of this Court because the unlawful employment practices alleged were committed within Sacramento County, which is within the jurisdiction of the Sacramento Division.

## PARTIES

4. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5. At all relevant times, Defendant PCA has continuously been a Delaware corporation doing business in the State of California and Sacramento County, and has continuously had at least 15 employees.

6. At all relevant times, Defendant PCA has continuously been an employer engaged in an industry affecting commerce, within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. At all relevant times, Defendant Schwarz has continuously been an Indiana Limited Partnership doing business in the State of California and Sacramento County, and has continuously had at least 15 employees.

8. At all relevant times, Defendant Schwarz has continuously been an employer engaged in an industry affecting commerce, within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

9. At all relevant times, Defendants been covered entities under Sections 701(b), (g),

and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10. Defendant Schwarz is a holding company that owns companies across various industries, including packaging and transportation. Schwarz provides management services and human resources, accounting, engineering, and information technology services to the companies it has ownership interests in. Through another LLC, Schwarz co-owned Northern Sheets, LLC, and the plant where Charging Parties worked for most of the relevant period. Schwarz controlled Charging Parties' working conditions, including whether they worked, where they worked and the circumstances under which they could be terminated, mainly through Northern Sheets personnel. Northern Sheets' senior Human Resources personnel reported directly to Schwarz management. Schwarz also oversaw investigations into complaints of discrimination at the Northern Sheets plant.

11. Defendant PCA is a private employer that manufactures metal and paper containers and other corrugated packaging products. In 2017, PCA purchased Schwarz's interests in Northern Sheets, LLC, including the Northern Sheets plant where each of the Charging Parties worked. Northern Sheets, LLC, merged with PCA as part of the purchase and ceased to exist. Thereafter, PCA directly employed each Charging Party through the end of their respective employments.

12. At all relevant times, Defendants, together, have conducted business as joint employers.

## ADMINISTRATIVE PROCEDURES

13. More than thirty days prior to the institution of this lawsuit, Caleb Calloway and Marvin Lyles filed timely charges with the EEOC alleging violations of Title VII by Defendants.

14. On August 22, 2019, the EEOC issued to Defendants Letters of Determination for Caleb Calloway's and Marvin Lyles' charges finding reasonable cause to believe that Defendants violated Title VII. The Letters of Determination also invited Defendants to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices identified in the Determination and to provide other appropriate relief.

15. On September 25 and 26, 2019, the EEOC convened a telephonic conciliation conference with Defendants' authorized representatives and counsels. During this conference, the parties engaged in conciliation negotiations.

16. The EEOC was unable to secure from Defendants a conciliation agreement acceptable to the EEOC.

17. In letters dated September 28, 2019, the EEOC notified Defendants that the EEOC had determined that efforts to conciliate the charges were unsuccessful and that further negotiations would be futile or non-productive. The letter also informed Defendants that the EEOC would not make any further efforts to conciliate the charges.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF CLAIMS**

19. Beginning in at least 2013, and continuing through at least December 2017, Defendants engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1). Defendants' unlawful practice, which occurred on a regular basis, included subjecting the Charging Parties to unwelcome, severe or pervasive conduct based on their race (African-American), that created an offensive, abusive, intimidating, and hostile work environment.

20. Charging Parties Caleb Calloway and Marvin Lyles are African-Americans, who worked for Defendants. The Charging Parties worked at Northern Sheets, a corrugated product manufacturing plant in McClellan, CA.

21. Lyles began working at Northern Sheets as a Machine Operator in 2012. He worked for Defendants at this site until December 2017. Calloway began working at Northern Sheets as a Machine Operator in 2014. There, he was employed until October 2017.

### Coworker's Racist Taunting

22. Beginning in at least 2013, and continuing through at least December 2017, Charging Parties witnessed and/or endured racial slurs, including the word "nigger." These comments occurred throughout the plant. One of the plant Shift Supervisors used the phrase, "these muthafucking niggers," after admonishing African-American employees. Another employee, a Shift Leader, repeatedly referred to Charging Parties and other African-American employees as "nigger," "boy," and "nig." Such phrases were repeated over the radio system that the employees used to communicate in the plant.

COMPLAINT FOR EMPLOYMENT
DISCRIMINATION                                      4

U.S. Equal Employment Opportunity Commission
450 Golden Gate Avenue, 5th Floor W., POB 36025
San Francisco, CA 94102

23. Non-African-American co-workers would taunt African-American employees for mistakes, real or imagined, by pointing at their own forearms and saying or mouthing "cause you're Black." Management was aware of the epithets and would periodically instruct employees not to use offensive language, but took no other actions to curtail them.

24. Despite having actual and constructive notice of the harassment herein, Defendant failed and refused to take prompt and appropriate action to halt the harassment and the resulting hostile work environment. The hostile work environment persisted until both Charging Parties had left the plant in late 2017.

<u>Nooses and Other Racist Imagery</u>

25. During their employments, both Charging Parties were subjected to nooses dangled in front of them. On or around August 14, 2017, a Shift Lead approached Calloway with a hangman's noose made of an air hose and asked Calloway, "do you think it will hold?" Sometime that same month this Shift Lead also tied a noose out of hose and dangled it in front of Lyles proclaiming that he "knew how to make a noose." Lyles reported this incident to the Plant Manager. As with Lyles' prior complaints of racial slurs, the Plant Manager stated only that he would, "deal with it." Management neither followed up with Lyles about the incident, nor, to Lyles' knowledge, ever disciplined the Shift Lead.

26. During the same August shift when his Shift Lead brandished a noose toward him, Calloway also saw the Shift Lead sketch a confederate flag on Calloway's paper roll along with the words "long live the confederacy." Calloway saw the drawing as an obvious racial threat.

27. A day or so later, during the mid-August 2017, Calloway saw a swastika cut into another paper roll. Swastikas had appeared in the warehouse before. Lyles had previously seen a swastika scratched into the wall of a bathroom. He also had seen a swastika scrawled on a piece of paper in the break room, which he reported to management.

<u>Vandalized Vehicles</u>

28. Both Charging Parties also experienced their vehicles being vandalized. Over time, Calloway observed the tires punctured or slashed on two sedans, a motorcycle, and two bicycles he owned. He often found his vehicles spit on, scratched and dented. Defendant eventually allowed

1  Calloway to park his car in a different, more visible parking lot for a few months, but later required

2  him again to use the parking lot where his property had been damaged. The vandalism continued.

3      29.    During his breaks and after work, Lyles regularly saw spit on his car. Lyles

4  repeatedly complained to the site Superintendent, but the vandalism was downplayed and dismissed.

<u>Management Continues to Ignore Charging Party's Complaints</u>

6      30.    On or around August 2017, Calloway reported by email to the Human Resources

7  Manager the confederate flag, "long live the confederacy" graffiti, the racial slurs, and other

8  harassment. Calloway explained that the harassment was ongoing, and identified the perpetrator.

9      31.    Despite the report, Human Resources Manager failed to conduct an inadequate

10  investigation into the harassment. She neither interviewed the individual named as the main

11  perpetrator in Calloway's complaint, nor interviewed Calloway, nor reviewed the camera footage of

12  the area where the Shift Lead had drawn on Calloway's rolls. The Human Resources Manager

13  ultimately concluded her investigation due to insufficient evidence of harassment.

14      32.    Defendants did not take any other reasonable steps to prevent the hostile work

15  environment.

16      33.    Therefore, Calloway felt he could not continue working at this point. Calloway took

17  leave on or around August 16, which lasted through his constructive termination.

18      34.    On or around October 2, 2017, Calloway submitted a notice of resignation. In his

19  resignation email, Calloway wrote:

> "It's hard to deal with the constant racism issues regarding personal boundaries, and I no longer felt comfortable at work. I felt retaliation every time I reported something. Similar scenarios have been happening since the previous hr manager was there and I reported with him as well. I wouldn't be leaving if it wasn't for that atmosphere."

23      35.    Lyles continued working for several more months until December 2017.

24      36.    The effect of the practices complained of in paragraphs 20 through 34 above has been

25  to deprive the Charging Parties of equal employment opportunities and otherwise adversely affect

26  their status as employees because of their race.

27      37.    The unlawful employment practices complained of in paragraphs 20 through 34 were

28  done with malice or in reckless indifference to the federally protected rights of the Charging Parties.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, successors, and all persons in active concert or participation with them, from creating, failing to prevent and failing to promptly correct an offensive, abusive, intimidating, and hostile work environment on the basis of race and engaging in any other employment practice that discriminates on the basis of race.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for African-Americans, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole the Charging Parties by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 20 through 34 above in amounts to be determined at trial.

D. Order Defendants to make whole the Charging Parties by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 20 through 34 above, including inconvenience, pain and suffering, loss of enjoyment of life, anxiety, stress, and humiliation, in amounts to be determined at trial.

E. Order Defendants to pay the Charging Parties punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

/ / /

/ / /

/ / /

# JURY TRIAL DEMAND

Plaintiff EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

Dated: September 29, 2020

| | |
|---|---|
| BY: */s/ Roberta L. Steele*<br>　　Roberta L. Steele<br>　　Regional Attorney | SHARON FAST GUSTAFSON<br>General Counsel |
| BY: */s/ Marcia L. Mitchell*<br>　　Marcia L. Mitchell<br>　　Supervisory Trial Attorney | JAMES L. LEE<br>Deputy General Counsel<br><br>GWENDOLYN Y. REAMS<br>Associate General Counsel |
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>San Francisco District Office<br>450 Golden Gate Ave., 5th Floor West<br>P.O. Box 36025<br>San Francisco, CA 94102<br>Telephone No. (650) 684 0934<br>Fax No. (415) 522-3425<br>James.baker@eeoc.gov | Office of the General Counsel<br>131 "M" Street NE<br>Washington, D.C. 20507 |